# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LODESTAR ANSTALT,
a Liechtenstein Corporation,

     Plaintiff,

v.                                  No. 1:17-cv-00062-JCH-JHR

ROUTE 66 JUNKYARD BREWERY LLC,
a New Mexico Limited Liability Company,
and HENRY LACKEY, an individual,

     Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff owns trademarks of the phrase Route 66 and the iconic highway shield design to make and sell beer. Defendants Route 66 Junkyard Brewery LLC ("the Brewery") and its owner Henry Lackey also use the phrase Route 66 and a design logo to produce beer at a microbrewery in Grants, New Mexico. After unsuccessful cease-and-desist efforts, Plaintiff brought an action under the Lanham (Trademark) Act, 15 U.S.C. § 1114 against Defendants for infringement of their federally registered trademarks and against the Brewery for unfair competition under 15 U.S.C. § 1125. *See* Am. Compl., ECF No. 17. The parties cross-moved for summary judgment, arguing that they are entitled to judgment as a matter of law on whether Defendants willfully infringed on Plaintiff's Route 66 trademarked beer. Plaintiff additionally sought summary judgment on Defendants' affirmative defenses and an injunction to permanently enjoin Defendants from using the phrase Route 66 in connection with beer. After carefully considering the motions, briefs, evidence, and relevant law, the Court concludes that the parties' motions should be denied.

## I.      BACKGROUND

In presenting the facts taken from the parties' cross-motions for summary judgment, the Court will set forth the respective parties' version of events as supported in the record. The Court will construe the facts in the light most favorable to the non-moving party in the analysis of each party's respective motion for summary judgment.

**A.      Plaintiff's Trademarks and Product Advertising**

Plaintiff owns United States Trademark Registration No. 4,254,249 for the word mark ROUTE 66, a standard character mark without any particular font, style, size, or color, and No. 4,442,767 for the following design mark:



*See* Plaintiff's Motion for Partial Summary Judgment and Permanent Injunction, ECF No. 47 ("Pl.'s MSJ"), Undisputed Fact ("UF"), ¶ 1; Pl.'s Ex. 2, ECF No. 49-1. Both marks are for use with beer and had respective registration dates of 2012 and 2013. UF ¶ 1. Under these marks, Plaintiff manufactures and distributes an India pale ale/lager blend brewed to Plaintiff's specifications by Minhas Craft Brewery located in Wisconsin. *Id*. ¶ 3. Plaintiff's beers are offered as draft beer at bars in the United States and sold alongside local specialty beers. *Id*. ¶¶ 5-6. Where its Route 66 beer sold on draft , Plaintiff provides bars with Route 66-branded tap handles. *Id*. ¶ 5. Plaintiff shipped and sold its beer using its Route 66 marks in New Mexico, Kansas, Arkansas, and Missouri. *Id*. ¶ 8. Plaintiff currently uses a distributor, Admiral Beverage Company ("Admiral") to sell its beer in New Mexico. *Id*. ¶ 9.

Since 2012, Plaintiff has used its marks to advertise beer online throughout the United States, including New Mexico, by way of its website, YouTube channel which has garnered over

82,000 views, and Facebook account. *See* Declaration of André Levy, ¶¶ 6-7; 9, ECF No. 49, ("Levy Decl."). Since 2016, Plaintiff has also advertised images of its Route 66 beer and marks on its Instagram account where it has over 31,000 Instagram "followers." *Id*. ¶ 8. Plaintiff has also used these marks to advertise beer on billboards, radio advertisements, t-shirts, placards, in-store displays, and sponsorships. *Id*. ¶ 11. However, in 2014 and 2015 Plaintiff's advertising of its Route 66 beer in the United States "tailed off" because of low product sales and by 2016 and 2017 Plaintiff spent no money advertising "above the line" of its beer in in the United States. *See* Deposition of André Levy, 57:21-25 – 58:1-7; 59:8-25 – 60:1-23, ECF No. 52-1 ("Levy Dep."). According to Defendants, "above the line" advertising refers to product advertising conducted by radio, television and magazine, whereas "below line" advertising refers to advertising conducted on the internet. *See* Defs.' Resp. Br., ¶ 2, ECF No. 52.

### B.      Mr. Lackey Establishes the Brewery

Mr. Lackey opened the Brewery in July 2016 and brewed and sold draft beer there. *See* UF ¶¶ 17; 12. The Brewery used the words Route 66 in connection with selling beverages. *See* Pl.'s Req. for Admis., Ex. 2, ECF No. 48-1. Mr. Lackey is the Brewery's president and sole owner and he decided to use the name Route 66 in connection with the Brewery. *See* UF ¶¶ 10-11. Mr. Lackey was unaware of Plaintiff and its Route 66 beer at the time he established the Brewery. *See* Affidavit of Henry Lackey, ¶ 5, ECF No. 52-1 ("Lackey Aff."). Before opening the Brewery, Mr. Lackey did an internet search of the terms "Route 66 brewery," but not of the terms "Route 66 beer." Deposition of Henry Lackey, 55:7-12, ECF No. 48-1 ("Lackey Dep."). Nor did Mr. Lackey consult with a trademark attorney before opening his business. *See* UF ¶ 15. Mr. Lackey believed that Route 66 belonged in the public domain and stated that "I think that if you want to use something that's already been made popular by somebody else, then that's the risk you run that other people

are going to use it," and that he chose to use the words Route 66 with the understanding that "someone else is going to sell Route 66 beer." Lackey Dep. 91:5-8; 92:1-8. An internet search of the term "Route 66 beer" would have returned Plaintiff's website as the first result. *See* UF ¶ 14.

After the Brewery opened, one of its best-selling beers was a pale ale that Defendants referred to as "Route 66 Junkyard Brewery Metro" on a menu. *Id*. ¶ 23. Defendants also referred to the pale ale as a "Route 66 Junkyard Metro" on a dry erase board. *Id*. Defendants used the following logo to promote their beer:



Pl.'s Ex. 8, ECF No. 48-1. This logo was used on the Brewery's Facebook page, food and drink flyers, menus, and on various signs located on the Brewery's interior walls, the bar where drinks were served, and on a sign next to the Brewery's exterior doorway. *See id.;* Pl.'s Exs. 22 – 26, ECF No. 48-1. Defendants' logo differed from Plaintiff's Route 66 shield mark in five ways: Defendants' logo has a spigot on the side; is yellow; has bubbles within the yellow coloring; contains the word "Junkyard;" and has a different font. *See* Defs.' Motion for Summary Judgment on Non-Infringement, ECF No. 56 ("Defs.' MSJ"); Defs.' Resp. Br. ¶ 3(a)-(e); Pl.'s Reply Br. 1, ECF No. 54.

In requests for admission, Defendants admitted that they used the words Route 66 to identify the Brewery and not to identify the Brewery's address as being on Route 66. *See* UF ¶ 28. The Brewery's physical address is 1634 B Highway 66. *Id*. ¶ 29. In an affidavit, though, Mr.

Lackey stated that he did use the name Route 66 to describe where the Brewery was located. *See* Lackey Aff. ¶ 4.

### C. Plaintiff's Cease-and-Desist Efforts

On September 21, 2016, about two months after Mr. Lackey established the Brewery, Plaintiff sent Mr. Lackey a cease-and-desist letter notifying him of Plaintiff's trademark registrations and requesting that he stop using Route 66 in connection with selling and brewing beer. *See* UF ¶ 24. Mr. Lackey did not respond, so on November 4, 2016 Plaintiff sent a follow-up letter. *Id*. Mr. Lackey replied in late November saying "Route 66 Junkyard Brewery is the name of the location and not the name of a beer that we sell. We currently have on beer that we brew and it is called Metro, … We will never sell a beer called route 66!" Pl.'s Ex. 1 (cited by Plaintiff as Ex. 28), ECF No. 48-1. Plaintiff responded to Mr. Lackey in December and reiterated its infringement claim. *See* UF ¶ 26.

After receiving Plaintiff's cease-and-desist letter, Mr. Lackey researched Route 66 beer to determine whether he should comply with the letter. *See* Lackey Aff. ¶ 13. Mr. Lackey learned that Sierra Blanca Brewing Company in Moriarty, New Mexico sold a Route 66-branded beer. *Id*. ¶ 24; Lackey Dep. 24:19-25 – 25:1-20. In fact, Mr. Lackey sold Sierra Blanca's Route 66 beer at the Brewery, and he knew that Plaintiff also targeted Sierra Blanca with cease-and-desist letters. *See* Lackey Dep. 22:21-24. Despite Plaintiff's cease-and-desist letter to Defendants in 2016, Defendants sold Sierra Blanca's lager and referred to it verbally and on a dry erase board as a Route 66 beer. *See* UF ¶ 27.

Another brewery, Blue Grasshopper Brewing in New Mexico, also sold Sierra Blanca's Route 66 branded beer, with Admiral acting as the distributor for several years. *See* Affidavit of Greg Nielsen, 1, ¶ 1, ECF No. 52-1 ("Nielsen Aff."). Plaintiff sent Blue Grasshopper's owner, Mr.

Nielsen, a cease-and-desist letter in mid-2017, asking him to stop selling Sierra Blanca's Route 66 beer. *Id*. ¶ 2. Mr. Nielsen still sells Sierra Blanca's beer, but the beer goes by a new name. *Id*. ¶ 3

**E.    Plaintiff's Beer Sales in the United States and Admiral's Distribution of Plaintiff's Beer**

Mr. Levy, Plaintiff's Trademark Advisor, testified that Plaintiff sold no Route 66 beer in New Mexico until 2016, although Plaintiff did continually advertise its beer and marks in New Mexico by means of online advertisements. *See* Levy Dep. 67:3-17. Plaintiff had on its website a list of locations in the United States where its Route 66 beer was sold retail in stores or bars so that customer could find where to buy its beers. *Id*. 82:22-25 – 83:1-2. No more locations were added to this database after May 2014, although the database was incomplete. *Id*. 84:8-12. Mr. Levy testified that Plaintiff's beer sales in the United States temporarily ceased while Plaintiff "reviewed the situation" because of poor product sales. *Id*. 84:16-25.

How long that temporary cessation lasted is disputed by the parties.[1] One of Plaintiff's business records titled "Route 66 sales 2016 to 2017" shows that Plaintiff's beer sales were in Europe and the Middle East. At the time Mr. Levy was deposed in July 2017, however, Plaintiff had renewed beer sales within the United States, including New Mexico.

Kevin Lente, Admiral's Craft Brand Manager, purchases and distributes beer to retailers in the Albuquerque area. *See* Affidavit of Kevin Lente, ECF No. 61-1 ("Lente Aff."). Mr. Lente

---

[1] Relying on Mr. Levy's deposition, Defendants assert that Plaintiff's beer was such a weak product that Plaintiff did not sell its beer in the United States between 2014 and 2017. *See* Defs.' Resp. Br. at 9 (citing Levy Dep. 83:1-24 – 84:1-24). Defendants also assert, without any citation to the record, that Plaintiff only sold its beer in Europe and therefore customer confusion between Defendants' logo with Plaintiff's marks is "impossible." *See* Defs' Reply Br., ECF No. 61 at 3. However, nowhere did Mr. Levy testify that Plaintiff's beer sales in the United States stopped between 2014 and 2017, so the Court does not draw that inference in Defendants' favor. Nor does the Court credit as true Defendants' claim that Plaintiff exclusively sold its beer in Europe because Defendants failed to cite the evidentiary record in support of this assertion.

stated in an affidavit that Admiral sold Plaintiff's Route 66 beer in July 2017 and that Plaintiff's beer was sold retail through Jubilation Wine & Spirits in Albuquerque, New Mexico. *Id.* ¶¶ 2, 4. Because Plaintiff's beer sales underperformed, Mr. Lente informed Plaintiff in an October 6, 2017 e-mail that Admiral did not plan to purchase more of Plaintiff's beer. *Id.* ¶¶ 5-6. Until Plaintiff approached Mr. Lente in 2017 to sell its beer, Mr. Lente never heard of Plaintiff or its Route 66 beer. *Id.* ¶ 7.

Plaintiff submitted a rebuttal affidavit from Greg Brown, Mr. Lente's superior at Admiral. In his affidavit, Mr. Brown stated that "Mr. Lente did not have authority to make the statements contained in his … affidavit … and Mr. Lente was not making statements in that affidavit on behalf of Admiral." Affidavit of Greg Brown, ¶ 3, ECF No. 65-1 ("Brown Aff."). Mr. Brown stated that "Admiral is currently the distributor of Lodestar's Route 66 beer in New Mexico and will distribute additional Lodestar branded beer in New Mexico." *Id.* ¶ 4.

In a supplemental affidavit, Mr. Levy, stated that Admiral "is currently and has continuously been the distributor for Lodestar's Route 66 beer in New Mexico and will distribute additional Lodestar Route 66 branded beer in New Mexico;" that Admiral "has distributed Lodestar's Route 66 beer to at least three locations in Albuquerque, all of which currently offer the product for sale;" and that it is also for retail sale outside of New Mexico. *See* Supplemental Affidavit of André Levy, ¶¶ 2-4, ECF No. 65-2 ("Suppl. Levy Aff."). Mr. Levy also stated that in October 2017 Plaintiff marketed and promoted its Route 66 beer at the National Beer Wholesalers Association in Las Vegas, Nevada and that it is establishing regional and national distribution agreements to sell its beer nationwide. *Id.* ¶¶ 5-6.

## II.    PROCEDURAL HISTORY

Plaintiff brought a two-count amended complaint on March 17, 2017 against Defendants, claiming that Defendants' alleged use of its federally registered Route 66 marks in connection with the sale of beer constitutes infringement (Count I) and unfair competition (Count II), both of which are violations of the Lanham Act. In its Prayer for Relief, Plaintiff seeks to permanently enjoin Defendants from the continued use of the word Route 66; a monetary award for corrective advertising to rectify alleged customer confusion caused by Defendants' alleged infringing use; disgorgement of profits; damages and treble damages under the Lanham Act; and attorneys' fees. *See* Am. Compl. ¶¶ 1-7 at 7.

Mr. Lackey answered *pro se* on behalf of the Brewery. *See* ECF No. 13. The Court struck that pleading as violating D.N.M.LR-Civ. 83.7, which requires a business entity to appear in federal court through legal counsel. *See* ECF No. 14. Defendants complied with the Court's Order and Defendants' subsequent filings have been through counsel. In their Answer, Defendants pleaded seven affirmative defenses: fair use, unclean hands, trademark abandonment, failure to mitigate damages, failure to state a claim upon which relief can be granted, equitable estoppel, and lack of standing.[2] *See* Defs.' Answer, ECF No. 29, 4-6. On October 16, 2017 discovery closed and the deadline to submit dispositive motions and fully briefed *Daubert* motions was October 30, 2017. Both parties timely moved for summary judgment on the issue of infringement, arguing that they were entitled to judgment as a matter of law on whether Defendants infringed on Plaintiff's marks.

On December 20, 2017, after the dispositive motion deadline passed, Defendants moved to reopen discovery to formally depose Messrs. Lente and Brown from Admiral, and to re-depose

---

[2] The Answer only purports to plead on behalf of Mr. Lackey. However, the parties' summary judgment arguments assume that the Answer applies to both Defendants, so the Court will interpret the Answer as pleading on behalf of Mr. Lackey and the Brewery.

Mr. Levy. *See* ECF No. 67. Defendants contended that Mr. Levy made contradictory statements concerning whether Plaintiff's beer was only sold internationally, and that reopening discovery would resolve material fact issues concerning whether Plaintiff's marks are commercially strong and whether consumers are likely to encounter Plaintiff's mark and Defendants' logo. The Honorable Jerry H. Ritter, United States Magistrate Judge, denied Defendants' motion to reopen discovery to depose the witnesses. Judge Ritter found that Defendants had three months of discovery to follow-up with Mr. Levy, but never did so, and that the need to depose the Admiral witnesses was foreseeable, yet Defendants never bothered to depose either witness. *See* Mem. Op. and Order, ECF No. 73.

## III. PLAINTIFF'S EVIDENTIARY OBJECTIONS

Before turning to the merits of the case, the Court must address Plaintiff's numerous evidentiary objections to statements in the affidavits of Messrs. Lente, Lackey, and Greg Nielsen. All three men appear as trial witnesses. *See* Pretrial Order, ECF No. 72. Rather than setting forth its legal analysis in a motion to strike, which is the more common practice for mounting a challenge of this kind, Plaintiff instead objected to the witnesses' affidavits in its summary judgment briefs. For their part, Defendants unhelpfully failed to respond with facts and legal arguments to Plaintiff's challenges, even though as the proponent of the evidence, it is their burden to show that the witnesses' statements are admissible or that Defendants can "put the … substance or content of the evidence [] into an admissible form" for trial. *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).

### A. Affidavit of Kevin Lente

Mr. Lente is an employee at Admiral. Admiral is purportedly both Plaintiff's and Sierra Blanca's beer distributor. Plaintiff challenges Mr. Lente's affidavit statements that Plaintiff's beer

did not perform well in sales, that Admiral did not order more of Plaintiff's beer, and that it had no plans to purchase more of Plaintiff's beer. Plaintiff also challenges Mr. Lente's statement that he was unaware of Plaintiff or its beer until 2017 and that New Mexico law prohibits microbreweries from selling beer not produced in New Mexico such that Plaintiff's beer cannot be sold in a microbrewery in New Mexico. *See* Lente Aff., ¶¶ 5-7; 9-10; Pl.'s Evidentiary Objections to Lente Aff., ECF No. 62. Plaintiff objects that Mr. Lente lacks personal knowledge to make these statements, that his statements exceed the bounds of lay testimony, are hearsay, irrelevant, and that Mr. Lente was not disclosed as a potential witness before discovery ended in violation of Fed. R. Civ. P. 26.[3]

Plaintiff is incorrect that Mr. Lente lacks personal knowledge that Plaintiff's beer sales underperformed, that Admiral ordered no more of Plaintiff's beer and had no plans to do so, and that Mr. Lente was unaware of Plaintiff or its beer until 2017. It is hard to see how Mr. Lente lacks personal knowledge on these matters given that he oversees buying and selling beer to retailers. Plaintiff's rebuttal affidavit from Greg Brown that Mr. Lente's statements were not made on Admiral's behalf, that Mr. Lente "did not have authority" to make his statements, and that "Admiral is currently the distributor of Lodestar's Route 66 beer in New Mexico and will distribute additional Lodestar [beer] in New Mexico," does not decide the matter. Rather, these are issues over which there is a genuine dispute of material fact for the trier of fact to resolve.

---

[3] Plaintiff had adequate notice that Mr. Lente would be a witness: Defendants identified an Admiral corporate representative in their initial disclosures (although they did not identify Mr. Lente specifically), Plaintiff litigated its objections to Mr. Lente's statements in a sur-reply, and Mr. Lente was disclosed as a trial witness in the Pretrial Order entered on February 28, 2018. *See* ECF Nos. 68-2; 72.

Plaintiff also says that Mr. Lente's statements about whether Plaintiff's beer is sold in New Mexico are irrelevant to the likelihood of confusion analysis.[4] Citing the Tenth Circuit's statement that "federally registered marks receive nationwide protection regardless of the area in which the registrant actually used the mark," *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 651 (10th Cir. 1996), Plaintiff argues that its 2012 and 2013 federal registration of its marks put Defendants on nationwide notice that they could not use a confusingly similar mark, regardless of whether Plaintiff sold beer in New Mexico. However, Plaintiff's registration of its trademarks does not answer the question of whether, in fact, Plaintiff's marks and Defendants' logo are confusingly similar. Mr. Lente's statements concerning the scale of Plaintiff's business presence in New Mexico are relevant evidence of whether consumers are likely to affiliate the parties' goods and whether the parties compete in overlapping channels. The Court will consider as part of the summary judgment record Mr. Lente's affidavit statements in paragraphs five through seven.

However, the Court will not consider as part of the summary judgment record Mr. Lente's affidavit statements in paragraphs nine and ten in which Mr. Lente stated that "New Mexico law prohibits New Mexico Microbreweries from selling out of state beer" and therefore "Lodestar's Route 66 beer cannot be sold at any New Mexico Microbrewery." Defendants have not shown that Mr. Lente is competent to provide opinion testimony about the rules governing microbreweries. Paragraphs nine through ten of Mr. Lente's affidavit will not be considered in the Court's evaluation of the summary judgment evidence.

### B.     Affidavit of Henry Lackey

---

[4] "Likelihood of customer confusion" is the legal test for trademark infringement. *See infra*, p. 17.

In his affidavit Mr. Lackey described the differences between craft versus commercial beer, stating that the craft and commercial beer markets are distinct so that beer drinks are unlikely to confuse the parties' products. He stated that Plaintiff's beer is a commercial beer like Budweiser, Coors, and Michelob; that he felt Plaintiff's beer was a poor product after researching it; and that Plaintiff's beer and Defendants' beer are not sold in the same markets and thus the parties are not market competitors. *See* Lackey Aff. ¶¶ 12, 14, 16, 17. Mr. Lackey also described the characteristics of craft beer consumers, saying that his typical clients are "sophisticated beer enthusiast[s]" who are tired of commercial beer and who seek out craft beer. *See id.* ¶¶ 18-19. Craft beer enthusiasts would not confuse craft with commercial beer, Mr. Lackey said, and he regularly asked his customers if they were familiar with Plaintiff's beer and they answered no. *See id.* ¶¶ 20, 22.

Plaintiff objected that Mr. Lackey lacks personal knowledge to make these statements, that his statements exceed the bounds of lay testimony, are hearsay, and are irrelevant.

Concerning Mr. Lackey's alleged lack of personal knowledge of the statements in his affidavit, Plaintiff is incorrect that Mr. Lackey lacks personal knowledge about the difference between craft and commercial beer, his feeling that Plaintiff's beer was a poor product based on his research, and that Plaintiff's and Defendants' beers are not sold in the same market and that the parties' products do not directly compete. Mr. Lackey's personal knowledge is properly based on his experience as a microbrewery owner and master brewer. The Court therefore considers as part of the summary judgment record the statements in Lackey Aff. ¶¶ 12, 16, 17, and that portion of paragraph 14 in which Mr. Lackey stated that he felt Plaintiff's beer was a poor product. Mr. Lackey also personally knows about craft beer consumer preferences and characteristics. While it would have been preferable to include an affidavit from such a consumer, courts in trademark

disputes have considered affidavits from company owners describing the characteristics of their customers. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc*., 576 F.3d 221, 231 (5th Cir. 2009) (considering store owner's affidavit describing characteristics of eyelash kit purchasers.). The Court will therefore consider as part of the summary judgment record Lackey Aff. ¶¶ 6 – 8.

Plaintiff also objects that to be admissible, Mr. Lackey's statements concerning craft beer and craft beer consumers' preferences require expert testimony and that testimony must be subjected to Fed. R. Evid. 702 analysis set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). As a general matter, courts permit expert testimony on things like consumer purchasing decisions. *See e.g. Conopco, Inc. v. May Dep't Stores Co*., 46 F.3d 1556, 1573 (Fed. Cir. 1994) (consumer psychology expert opined on consumer characteristics and motivations when purchasing inexpensive products.). Here, neither party disclosed an intention to call expert witnesses, although they said they "reserve[d] their right to rely on expert testimony" at trial. *See* Joint Status Report, ECF No. 18, 6. At this stage, no party has shown that craft beer and the characteristics of craft beer drinkers are matters on which the trier of fact requires an expert's specialized knowledge. The Court will consider as part of the summary judgment record Mr. Lackey's opinion testimony on craft beer and craft beer consumers.

But the Court will not consider as part of the summary judgment record Mr. Lackey's affidavit statements in paragraphs 15, 23, and 24, and embedded portions of paragraphs 14 and 22. Mr. Lackey stated that he "checked with [an] Admiral distributor and found that [Plaintiff's beer] had not been sold in New Mexico;" that he asked Jubilation Wine & Spirits' beer manager about sales of Plaintiff's beer and that the manger told him that sales underperformed; and that Admiral distributed Sierra Blanca's "Route 66 Lager" in New Mexico for five years. *See* Lackey Aff. ¶¶ 15, 23-24. Mr. Lackey also stated that according to a website Plaintiff's beer had a low rating, and

that "not ... a single customer" of his was familiar with Plaintiff's beer. *See id.* ¶¶ 14, 22. The forgoing statements are hearsay excluded under Fed. R. Evid. 802. Because no exclusion or exception to the hearsay rule allow Defendants to offer Mr. Lackey's out-of-court statements described herein, the Court does not consider those statements as part of the summary judgment record.

Nor will the Court consider Mr. Lackey's statement that Plaintiff's beer "is a weak product that will not survive in the New Mexico marketplace and will never be sold in New Mexico Microbreweries and therefore my [Brewery] will never compete and has never competed with Lodestar's Route 66 beer." *See id.* ¶ 25. Mr. Lackey lacks personal knowledge about Plaintiff's future commercial viability. And his statement that Plaintiff's beer will never be sold in microbreweries in New Mexico and that the parties' products will never compete relies on rules governing microbreweries that Defendants have not shown Mr. Lackey is competent to provide opinion testimony on.

### C.       Affidavit of Greg Nielsen

Mr. Nielsen, owner of Blue Grasshopper Brewing, stated that Plaintiff's beer is not craft beer, and that Plaintiff cannot sell its beer in a microbrewery in New Mexico because it is brewed out of state. *See* Nielsen Aff. ¶¶ 5-6, 8. Mr. Nielsen stated that craft beer drinkers tend to be discerning customers who are tired of commercial beer, that such consumers are unlikely to confuse Plaintiff's with Defendants' beer because they are not likely to drink commercial beer, nor search for Plaintiff's beer at a microbrewery. Mr. Nielsen additionally stated that Plaintiff's marks and Defendants' logo are different and "craft beer drinkers know exactly what they are looking for and are not likely to be confused." *See id.* ¶¶ 9-11.

The Court will consider as part of the summary judgment record Mr. Nielsen's statements that Plaintiff's beer is not craft beer and that craft beer drinkers are beer enthusiasts who seek out craft as opposed to commercial beer. *See id.* ¶¶ 5, 9. Like Mr. Lackey, Mr. Nielsen has personal knowledge of these facts and nothing indicates that expert opinion is necessarily required on these topics.

The Court will also consider as part of the summary judgment record Mr. Nielsen's statements that Plaintiff's beer "cannot be sold in any microbrewery in the state of New Mexico because it is not brewed" and Defendants therefore cannot sell Plaintiff's beer. *See id.* ¶¶ 6, 8. Unlike Messrs. Lente and Lackey, Mr. Nielsen stated that "going through the process of filling out the application for the federal and state licenses for microbreweries I am familiar with the laws surrounding Microbreweries." *Id.* at 1. This opinion is properly based on Mr. Nielsen's experience as a business owner in the craft beer industry and his personal knowledge about the scope of a craft beer license. Even if Mr. Nielsen's statements touch on specialized matters, "[w]hen a lay witness has particularized knowledge by virtue of her experience, she may testify – even if the subject matter is specialized or technical – because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009); *United States v. DeMuro*, 677 F.3d 550, 561-562 (3d Cir. 2012) (tax agent's opinion not necessarily based on specialized knowledge of the tax code where agent had personal knowledge and specialized expertise.).

However, the Court will not consider as part of the summary judgment record Mr. Nielsen's conclusions that craft beer drinkers would not confuse Plaintiff's and Defendants' products, and that consumers will not confuse Plaintiff's marks and Defendants' logo. *See* Nielsen Aff. ¶¶ 10-11. Likelihood of confusion between Plaintiff's mark and Defendants' logo is the

ultimate factual issue for the trier of fact to resolve, and therefore Mr. Nielsen's cursory conclusion on this issue will not be considered. *See Int'l Mkt. Brands v. Martin Int'l Corp.*, 882 F. Supp. 2d 809, 814 (W.D. Pa. 2012) (prohibiting expert opinion on whether confusion was likely because it intruded into the factfinder's role.).

## IV.     STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248–50. An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013). In analyzing cross-motions for summary judgment, a court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

If the moving party bears the burden of proof on its claims at trial, it must first affirmatively show that, on all the essential elements of his claims, no reasonable jury could find for the nonmovant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J. dissenting). "Summary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Leone*, 810 F.3d at 1153 (citation and quotations omitted).

## V.     ANALYSIS

### A.     Cross-Motions for Summary Judgment on Trademark Infringement

"Congress has defined a trademark as 'any word, name, symbol, or device, or any combination thereof ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002) (citing 15 U.S.C. § 1127). The Lanham Act allows the owner of a registered mark to bring an infringement action against any person who

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ….

15 U.S.C. § 1114(1)(a).

"The key inquiry in a trademark infringement case is the likelihood of confusion between two similar marks." *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 832–33 (10th Cir. 2005). "Confusion occurs when consumers make an incorrect mental association between the

involved commercial products or their producers." *John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1138 (10th Cir. 2008). "Likelihood of confusion is a question of fact, but the court may grant summary judgment in appropriate circumstances." *Water Pik, Inc.*, 726 F.3d at 1143. To show a likelihood of confusion, the trademark infringement plaintiff must show that confusion is probable, not merely possible. *See id.* at 1150-51. Six factors serve as a guide for evaluating the likelihood of confusion:

> (1) the degree of similarity between the competing marks; (2) the intent of the alleged infringer in adopting the contested mark; (3) evidence of actual confusion; (4) the similarity of the parties' products and the manner in which the parties market them; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the strength of the contesting mark.

*Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014). "These [six] factors are interrelated and no one factor is dispositive." *Water Pik, Inc.*, 726 F.3d at 1143. "At all times … the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks." *Id.* "[A] genuine dispute of material fact will not exist if all relevant factors, properly analyzed and considered together, ... indicate consumers are not likely to be confused." *Hornady Mfg. Co. Inc.*, 746 F.3d at 1001 (quoting *Heartsprings, Inc. v. Heartspring, Inc.,* 143 F.3d 550, 558 (10th Cir.1998)). "The factors are interrelated, and the importance of any particular factor in a specific case can depend on a variety of circumstances, including the force of another factor." *Hornady Mfg. Co. Inc.*, 746 F.3d at 1001. The party alleging infringement bears the burden of proving likelihood of confusion at trial. *See Water Pik, Inc*., 726 F.3d at 1144.

### 1. Similarity of the Marks

"The similarity of the marks is the first and most important factor." *Id.* "In evaluating the degree of similarity between marks, [the court] consider[s] the marks as they are encountered by the consumer in the marketplace and examine[s] them on three levels: sight, sound, and meaning."

*Heartsprings, Inc.,* 143 F.3d at 554. A court "must determine whether the allegedly infringing mark will confuse the public when singly presented, rather than when presented side by side with the protected trademark." *Sally Beauty Co.*, 304 F.3d at 972; *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983) ("[i]t is axiomatic in trademark law that" a court should not engage in a "'side-by-side' comparison" of the marks at issue) ("*Beer Nuts I*"). In making this evaluation, "similarities are weighed more heavily than differences, particularly when the competing marks are used in virtually identical products packaged in a similar manner." *Sally Beauty Co.*, 304 F.3d at 972. "[T]he test is not whether the public would confuse the *marks,* but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 930 (7th Cir. 2008) (citations and quotations omitted) (emphasis in original).

### a. Sight

Here, Plaintiff claims that the sight and sound of Plaintiff's marks and Defendants' logo are "identical," because both feature the word "Route 66," and that a reasonable jury viewing Plaintiff's mark and Defendants' logo would find that overall the visual impact between the two are not so dramatically different since both prominently feature the words "Route 66" and the shield mark design. However, "the court is not free to give dispositive weight to any one component of the marks," such as focusing entirely on the words Route 66. *See Hornady Mfg. Co., Inc.*, 746 F.3d at 1002. Courts may not "focus solely on name similarity," but must consider "the effect of marketplace presentation, including lettering styles, logos and coloring schemes." *Id.* (holding that the fact that the marks TAP and DoubleTap both contained the syllable "tap" did not control the similarity inquiry and rejecting plaintiff's contention that the district court erred "by

not elevating the .. word 'tap'…above all differences."); *Water Pik, Inc.,* 726 F.3d at 1156 (comparing the full words "Sinu*Cleanse*" and "SinuSense," and not just the components "*Cleanse*" and "Sense" and finding that the marks were dissimilar.).

Comparing Defendants' logo and Plaintiff's marks, both share the phrase Route 66 and both are set in a highway shield sign. Defendants' logo differs from Plaintiff's steely grey design mark in that it has a spigot on the side; is yellow; has bubbles within the yellow coloring; contains the word "Junkyard." Plaintiff describes these modifications as nothing more than taking Plaintiff's marks and adding beer coloring, bubbles, and a beer tap. These modifications – because they are so slight and because they relate to beer – are bound to make confusion even more likely, Plaintiff says.

However, differences in the overall marketplace impression between Plaintiff's mark and Defendants' logo show that a reasonable jury could conclude that there are enough differences between the two to diminish likelihood of confusion. Both parties utilize the word Route 66 to sell beer. But Plaintiff retails its beer in bottles and packaging with the Route 66 shield design and a "®" symbol next to it or sells its beer on draft using Route 66 tap handles. In contrast, Defendants did not uniformly advertise their beer in the same visual manner. In one instance Defendants advertised on a menu the words "Route 66 Junkyard Brewery Metro," in all capital letters and with the word "metro" prominently standing out in a large, bold, retro script. However, on a dry erase board, Defendants deemphasized the word "metro" and in handwritten script simply wrote, "Route 66 Junkyard Metro" beer, omitting the word "Brewery" altogether. While the shared phrase Route 66 overlaps between Plaintiff's mark and Defendants' logo, the inclusion of the word "Junkyard" after Route 66 in Defendants' logo highlights the visual differences. *See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1090–91 (10th Cir. 1999) (no similarity despite

shared phrase "king of the mountain" because of different coloring, font, and background images between marks.).

Plaintiff argues that when it comes to inexpensive product like beer, "similarities are to be weighed more heavily than differences, especially when the trademarks are used on virtually identical products packaged in the same manner." Pl.'s MSJ at 8 (citing *Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920, 925 (10th Cir. 1986) ("*Beer Nuts II*") (holding that the marks BREW NUTS and BEER NUTS were confusingly similar since the products were inexpensive snack-food easily purchased on impulse, were marketed and packaged in the same manner, and reached consumers in the same retail outlets)). And in the case of alcoholic beverages specifically, Plaintiff asserts that "the degree of similarity need not be as high as usual since the likelihood of confusion is greater because drinks are frequently purchased at bars and clubs without the pruchaser [sic] seeing any bottles or labels." Pl.'s MSJ at 8-9 (quoting *A. Smith Bowman Distillery, Inc. v. Schenley Distillers, Inc.*, 198 F. Supp. 822, 827–28 (D. Del. 1961)). In *A. Smith Bowman Distillery, Inc.*, the court held that the parties' marks for bourbon – "Indiana Gentleman" and "Virginia Gentleman" – were confusingly similar because bars sell bourbon by verbal request and therefore a customer may only remember the word "gentlemen" when ordering, and will not be aided by bottles or packaging to help him distinguish the products.

However, these cases demonstrate that confusion necessarily depends on the context where consumers will encounter the marks in question. The Brewery's consumer appeal is that it does not sell commercial beer, thereby diminishing the likelihood that a confused customer will order Defendants' beer thinking it is Plaintiff's beer. A customer at Mr. Lackey's Brewery will not see Plaintiff's tap handles or any bottled or packaged beer because Defendants only sell draft beer. A customer sitting in Mr. Lackey's brewery will certainly see Defendants' Route 66 logo displayed

about, but a reasonable jury could conclude that a consumer is unlikely to associate the parties' products given that craft beer customers purposefully seek out craft beer. These facts demonstrate that there is a triable issue of fact whether the overall visual marketplace impression between Plaintiff's mark and Defendants' logo is likely to lead to confusion.

b. Sound

As for the sound factor, in examining the differences between Plaintiff's marks and Defendants' logo, the trier of fact could find that that there are aural differences between them. Plaintiff argues that "[w]hen 'Route 66' is spoken … the sound of the marks is identical – 'Route 66,'" and that the phonetic similarity is particularly important since a customer may only verbally request a "Route 66" when ordering.  Pl.'s MSJ at 9. But the Court cannot shorten Defendants' commercial name in this manner. *See Sally Beauty,* 304 F.3d at 973 (district court erroneously shortened "Generic Value Products" to "Generic" when comparing it by sound with "GENERIX."). Accordingly, Defendants' full spoken name is "Route 66 Junkyard Brewery," and the Court may not place dispositive weight on the shared phrase Route 66. *See Water Pik, Inc.*, 726 F.3d at 1156 (holding that "SinuSense" and Sinu*Cleanse*" are aurally dissimilar despite shared component "Sinu.").

Plaintiff also argues that Mr. Lackey admitted that he "identified Route 66 beer by orally referring to it as 'Route 66' beer" and thus "customers would not even hear the phrase 'Junkyard Brewery' when offered the 'Route 66' beer products." Pl.'s MSJ at 9; Pl.'s Resp. Br., ECF No. 58, 14.  However, the record only shows that Mr. Lackey referred to Sierra Blanca's beer as a "Route 66 beer." There is no evidence that Defendants verbally referred to their beer as "Route 66" beer.

c. Meaning

As to the meaning factor, the trier of fact could reasonably conclude that Plaintiff's marks and Defendants' logo are similar. Both relate to the sale of beer, and both draw on the phrase Route 66 and shield mark to convey that message. *See Standard Oil Co. v. Standard Oil Co.,* 252 F.2d 65, 74 (10th Cir.1958) (meaning is proved when the two marks convey the same idea or stimulate the same mental reaction).

In weighing these three elements, the meaning factor favors Plaintiff. However, enough differences in sight and sound between Plaintiff's mark and Defendants' logo makes necessary resolution by the trier of fact of whether the two are confusingly similar.

## 2. Defendants' Intent

"Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion." *Hornady Mfg. Co. Inc.,* 746 F.3d at 1003. "Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion." *Beer Nuts, Inc.,* 711 F.2d at 941. "[P]roof that a defendant chose a mark with the intent of copying plaintiff's mark, standing alone, may justify an inference of confusing similarity." *Id.* "The proper focus [is] whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.,* 22 F.3d 1527, 1532 (10th Cir. 1994). "Conversely, if the evidence indicates a defendant did not intend to derive benefit from a plaintiff's existing mark, this factor weights against the likelihood of confusion." *Heartsprings, Inc.,* 143 F.3d at 556.

Plaintiff makes three arguments concerning the intent factor. First, it says that Defendants' intent to copy can be inferred from the fact that that after it sent Defendants a cease-and-desist letter, Defendants continued to sell Sierra Blanca's Route 66 beer, and therefore Defendants conduct was not innocent. But in *Hornady Mfg. Co. Inc.,* the court rejected a similar argument,

noting that "[u]nder the intent factor, the alleged infringer's intent is measured at the time it chose or adopted its mark." 746 F.3d at 1004 (internal quotations omitted). Thus, events postdating Defendants' adoption of their logo, such as Plaintiff's cease-and-desist letters, are irrelevant to the intent analysis. Second, Plaintiff renews its constructive notice argument. It says that federal registration of its marks gave Defendants constructive notice at the time Defendants adopted their logo. But "[t]he existence of notice is not evidence that a later user necessarily intended to confuse." *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 57 F. Supp. 2d 155, 174 (E.D. Pa. 1999), *aff'd in part, vacated in part sub nom. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000), and thus this evidence also does not control the analysis.

Finally, Plaintiff asserts that Defendants intended to confuse customers by pointing to the fact that Mr. Lackey did not perform a trademark clearance, and his deposition statements that "if you want to use something that's already been made popular by somebody else, then that's the risk you run that other people are going to use it. And when I chose my name, Route 66, I chose it with the understanding that, hey, someone else is going to sell Route 66 beer. And that's life." Lackey Dep. 91:5-8; 92:1-8. Plaintiff says this is proof that Defendants intended to "capitalize on the popularity of others using the mark before them for the same goods." Pl.'s MSJ at 16. Defendants submitted Mr. Lackey's rebuttal affidavit that at the time he established the Brewery he was unaware of Plaintiff's existence and beer, that he did not try to copy Plaintiff's beer, and that he used the name Route 66 to describe the Brewery's location and the fact that it was housed within a junkyard.

Thus, both parties have submitted summary judgment evidence that presents a genuine issue of material fact concerning whether Defendants intended to "pass-off" their beer as Plaintiff's product, thereby requiring resolution by a factfinder.

### 3.      Evidence of Actual Confusion

"[A]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Water Pik, Inc.*, 726 F.3d at 1144. However, evidence of actual confusion is not necessary to prevail on a trademark infringement claim since it is very difficult to prove, and the legal standard is likelihood, not actual, confusion. *See Sally Beauty Co.*, 304 F.3d at 974. "Such evidence may be introduced through surveys, although their evidentiary value depends on the methodology and questions asked." *Id*. "Evidence of actual confusion does not create a genuine issue of fact regarding likelihood of confusion if it is *de minimis.*" *Id*. Plaintiff introduced no surveys. Instead, Plaintiff points out that Mr. Lackey confused Plaintiff with Sierra Blanca after he received Plaintiff's cease-and-desist letter, mistakenly believing that Sierra Blanca sent the letter and was going to sue him. Plaintiff argues that this shows Mr. Lackey was confused as to the source of Plaintiff's beer, and that Mr. Lackey's confusion is highly relevant because as a brewery owner he is more sophisticated than the point-of-sale customer. Defendants argue that only direct consumer confusion is relevant evidence of actual confusion.

Of course, the "confusion" referred to is confusion caused by Plaintiff's mark and Defendants' logo – not Mr. Lackey's confusion of Sierra Blanca's and Plaintiff's products, as Plaintiff argues. Even assuming, *arguendo*, that this is evidence of actual confusion, it is *de minimis. See Hornady Mfg. Co.*, 746 F.3d at 1005 (three instances of confusion over a ten-year period, including several phone calls indicating customer confusion of products, considered *de minimis*); *Water Pik, Inc.*, 726 F.3d at 1151. However, the Court must treat as neutral the absence of actual evidence of confusion. *See Beer Nuts II*, 805 F.2d at 928. Thus, this factor weighs neither for nor against either party.

### 4.      Similarity of Products and Manner of Marketing

"The greater the similarity between the products ..., the greater the likelihood of confusion." *Sally Beauty Co.*, 304 F.3d 964. The court analyzes this factor "by separately considering (1) the similarity of products and (2) the similarity in the manner of marketing the products." *Id*. As to the first prong, Defendants conceded in their motion for summary judgment that the parties' products are similar.

As to the second prong, similarity in marketing channels, the court considers "whether the parties were competitors in consumer markets." *Sally Beauty Co.,* 304 F.3d at 974. The Tenth Circuit analyzed this factor in *Sally Beauty Co.*, holding that the district court wrongly concluded that there was little risk of confusion because the products did not compete in the same retail outlets. 304 F.3d at 975. The district court should have analyzed the similarity in marketing channels by "consider[ing] whether the parties were competitors in consumer markets," rather than require that the "infringing product be available on the same shelves." Thus, if products are marketed to consumers "in competing retail outlets," then likelihood of confusion increases. But a plaintiff need not show that the products are sold side-by-side at the same outlet. *Id.* at 975. In *Sally Beauty,* the products did compete in retail outlets, specifically in beauty supply stores. Thus, the marketing channels were similar because "[a] consumer who bought either party's products, which are similar in nature and packaging, … did so in competing retail outlets." *Id*.

Defendants do not sell their beer in retail outlets stores, but they do sell their beer from the Brewery. Plaintiff sells its beer in retail outlets and in bars. Thus, to a degree the parties compete in overlapping trade channels—bars—and target the beer consuming public. However, in analyzing this factor, the Court may consider whether consumers of the parties' products are distinct. *See Heartsprings, Inc.,* 143 F.3d at 556-57 (affirming district court's finding that the parties "[did] not provide products for the same group of consumers."). The record shows enough

contrasts in the craft versus commercial beer markets for a reasonable jury to conclude that confusion is unlikely. As noted earlier, the Brewery's consumer appeal is that craft beer is not commercial beer and that craft beer consumers are aware of the distinction. A customer at the Brewery will not encounter Plaintiff's marks, bottles, packages, tap handles, or beer. Similarly, a customer seeking Defendants' beer in a retail store will always come up empty handed. Plaintiff sold no beer in New Mexico until either 2016 or 2017. Plaintiff provided evidence that Admiral distributes Plaintiff's beer in New Mexico and will distribute additional beer, and that Plaintiff is establishing regional and national distribution agreements to sell its beer. However, Defendants' evidence shows that Plaintiff's market foothold in New Mexico is tenuous and that Plaintiff's beer sales in the United States temporarily ceased altogether. The Brewery is in Grants, New Mexico – a town off the former U.S. Route 66 – and there is conflicting record evidence concerning whether Defendants used the words Route 66 to identify the Brewery's location or its products. These facts amply demonstrate that there is a genuine dispute of material fact over whether the parties can fairly be regarded as competitors in trade channels.

Plaintiff believes that the parties' overlapping social media advertising strategies present a genuine issue of material fact. Concerning advertising similarities in particular, the parties' marketing practices "are particularly relevant[,] … because these practices directly impact the way in which consumers experience the parties' respective marks." *Heartsprings, Inc.*, 143 F.3d at 556. Plaintiff provides evidence that both parties use Facebook in their marketing efforts and therefore contends that the parties compete in overlapping social media marketing channels. Defendants failed to counter Plaintiff's social media argument.[5] So the Court draws the inference in Plaintiff's

---

[5] Defendants did submit record evidence that Mr. Levy could not remember how much money Plaintiff spent on social media advertising, suggesting that Plaintiff failed to generate overall consumer recognition for its beer. However, no reasonable jury could conclude that a witness's

favor and holds that a reasonable jury could conclude that Plaintiff's marks and Defendants' logo could have reached consumer in similar online marketing channels that could likely confuse customers.

Thus, although Defendants have put forward evidence showing that a reasonable jury could conclude that the parties are not competitors in the market, Plaintiff provided evidence that the advertising and marketing techniques are the same for both products, creating a triable issue on this element of likelihood of confusion.

### 5.      Degree of Consumer Care

"The court must examine the degree of care with which the public will choose the products in the marketplace." *Beer Nuts I*, 711 F.2d at 941. "The general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods, is the touchstone." *Id*. (citations and quotations omitted) "Buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse. Despite a lower degree of similarity, these items are more likely to be confused than expensive items which are chosen carefully." *Id*. This factor is based upon a notion that unsophisticated buyers increase the likelihood of confusion, whereas sophisticated buyers selecting a product with a high degree of care reduces the likelihood of confusion. *See Sally Beauty Co.*, 304 F.3d at 975. The focus of the inquiry is on "the consumer's degree of care exercised at the time of purchase and whether the item is one commonly purchased on impulse." *Hornady Mfg. Co., Inc*., 746 F.3d at 1006 (citations and quotations omitted).

---

lack of memory is particularly probative of anything in this context, and thus the Court does not draw that inference in Defendants' favor.

Plaintiff argues that this factor weighs in its favor because beer is a "textbook" cheap good that consumers purchase impulsively under the "chaotic conditions" of a bar where they cannot see packages or labels. Pl.'s MSJ at 13-14 (citing *Guiness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, No. 02 CIV. 0861 (LMM), 2002 WL 1543817, at *6 (S.D.N.Y. July 12, 2002)). However, Plaintiff presented no evidence that beer consumers carelessly purchase craft beer. *See Hornady Mfg. Co., Inc.*, 746 F.3d at 1006 (no genuine dispute of material fact where trademark infringement plaintiff failed to present evidence that consumers of firearm ammunition purchased ammunition impulsively and carelessly.). In contrast, Defendants provided Messrs. Lackey's and Nielsen's affidavits that craft beer drinkers are beer "sophisticated enthusiasts" who "seek a fresh beer that is locally brewed and has a craft taste and history." Because Defendants have provided concrete evidence concerning this factor and Plaintiff has not, the Court draws draws the inference in Defendants' favor and finds that a reasonable jury could conclude that craft beer consumers exercise careful purchasing decisions when buying craft beer.

### 6.      Strength of Plaintiff's Mark

"Likelihood of confusion depends partly on the senior mark's strength—that is, its capacity to indicate the source of the goods or services with which it is used." *Water Pik Inc.,* 726 F.3d at 1151 (citations and quotations omitted). "Strength has two aspects: conceptual strength, or the mark's place on the spectrum of distinctiveness, and commercial strength, or its level of recognition in the marketplace." *Id*.

### a.      Conceptual Strength

"Conceptual strength is measured on a spectrum of distinctiveness ranging along the following five categories (from least to most distinctive): (1) generic, (2) descriptive, (3)

suggestive, (4) arbitrary, and (5) fanciful." *Hornady Mfg. Co.,* 746 F.3d at 1007. "Only suggestive, arbitrary, and fanciful marks are considered strong in and of themselves." *Id.*

Defendants fail to identify which of the five categories of conceptual strength Plaintiff's mark falls within. But they call Plaintiff's mark "weak" because third-parties apply for trademark registrations in which the phrase Route 66 appears, including for use with alcoholic beverages. For instance, in 2009 third-party Aneks Group Ltd. applied for a trademark for future use of ROUTE 66 CLASSIC VODKA, but by 2014 the U.S. Patent and Trademark Office deemed Aneks' application "abandoned" because Aneks never followed up with proper paperwork. *See* Defs.' Resp. Br., Ex. 2, ECF No. 52-1. Plaintiff argues that Aneks' abandoned trademark application is minimally probative evidence, but in *Water Pik, Inc.*, 726 F.3dd at 1152, the Tenth Circuit held that similar evidence of third-party trademark applications and registrations in which the word "sinu" or "sinus" appeared, including on sinus-irrigation products, shed light on the conceptual strength of the plaintiff's "Sinu*Cleanse*" trademark.

For its part, Plaintiff argues that its marks are arbitrary, making them conceptually strong. An arbitrary mark "is a word or symbol already in common use that does not have any apparent relation to the product," as in "Apple computers" (*i.e.* just as "Apple" and "computers" have no apparent relation, nor does "Route 66" and "beer."). *See Water Pik., Inc.,* 726 F.3d at 1152. However, Plaintiff's own evidence shows that its marks are not particularly strong. Plaintiff's search of the federal registry reveals that the term Route 66 and the highway shield design are used widely by third-parties. *See* Pl.'s Resp. Br. at 9 ("The USPTO regularly grants trademark registrations to applicants, including … for marks including ROUTE 66."). Plaintiff points to six businesses using the term Route 66 or the highway sign for goods and services ranging from computers software programs, safety equipment, vehicles, furniture and furnishings. *See* Pl.'s Exs.

1-6, ECF No. 59-1. Thus, Plaintiff's own evidence shows that its marks are conceptually weak. *See First Sav. Bank*, 101 F.3d at 653 ("[t]he greater the number of identical or more or less similar marks already in use on different kinds of goods, the less is the likelihood of confusion between any two specific uses of the weak mark."). Plaintiff argues that there is no evidence of third-party use of Route 66 with beer specifically. However, this argument misses the point that "if a mark is weak, use of a similar mark even on similar goods is unlikely to cause confusion if minor differences distinguish one party's mark from another." *Water Pik, Inc.*, 726 F.3d at 1151; *Universal Money Centers, Inc.*, 22 F.3d at 1533-34 (plaintiff's trademarks with word UNIVERSAL in connection with electronic banking services weak because over 200 business, including six financial institutions, used the term.). Thus, there is no genuine dispute of material fact that Plaintiff's marks are conceptually weak.

### b. Commercial Strength

"Commercial strength is the marketplace recognition value of the mark." *King of the Mountain,* 185 F.3d at 1093. "It is analogous to secondary meaning." *Hornady Mfg. Co.*, 746 F.3d at 1008. "Secondary meaning refers to the level of distinctiveness that a descriptive mark must attain in the minds of consumers before it is eligible for trademark protection." *Water Pik, Inc.*, 726 F.3d at 1154. "To acquire secondary meaning, a descriptive mark must have been used so long and so exclusively by one producer with reference to his goods or articles that, in the trade and to that branch of the purchasing public, the mark has come to mean that the article is his product." *Id*. The court evaluates secondary meaning by examining "direct evidence of recognition by consumers and circumstantial evidence regarding: (1) the length and manner of the mark's use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made to promote a conscious connection, in the public's mind, between the mark and a particular product." *Hornady*

*Mfg. Co.*, 746 F.3d at 1008. "The stronger the evidence of secondary meaning, the stronger the mark, and the more likely is confusion." *Vail Assocs., Inc.*, 516 F.3d at 866.

i.        *Length and Manner of Plaintiff's Marks' Use*

Defendants did not challenge the length of Plaintiff's use of its marks, so the Court therefore draws the inference in Plaintiff's favor that the length of the marks' use since 2012 and 2013 lends them commercial strength. Defendants did, however, challenge the manner of the marks' use. They point to Mr. Levy's statement that in 2014 Plaintiff "started to wind down … activity because the sales were not what had been anticipated." Levy Dep. 84:16-19. Plaintiff counters that it has shipped and sold its beer using its Route 66 mark in New Mexico, Kansas, Arkansas, and Missouri, but admitted that it sold no beer in New Mexico until 2016 and that its beer sold poorly. The trier of fact should evaluate this evidence in determining whether the manner of Plaintiff's marks made them commercially strong.

ii.        *Nature and Extent of Advertising and Promotion of Plaintiff's Marks*

Since 2012 Plaintiff used its marks to advertise beer online throughout the United States, including New Mexico, by way of its website, YouTube channel and Facebook account and since 2016 it has advertised its marks on its Instagram account. In 2012 and 2013 Plaintiff had a budget of between $150,000 - $200,000 to advertise its marks. Plaintiff used its marks to advertise beer on billboards, radio advertisements, t-shirts, placards, in-store displays, and sponsorships. In *Hornady Mfg. Co.,* 746 F.3d at 1008, the Tenth Circuit found a company's mark commercially strong where it "spent hundreds of thousands of dollars" advertising its product in numerous channels over 17-years and thus a reasonable jury could find that this subfactor weighs in Plaintiff's favor even though by 2014 and 2015 Plaintiff tailed-off advertising of its beer in the United States.

    *iii.*   *Efforts to Promote a Conscious Connection between*
         *Plaintiff's Marks and its Beer in the Public Mind*

   Plaintiff argues that its above and below the line advertising alone created a conscious connection, in the public's mind, between its marks and beer. However, "evidence of a mark's promotion … standing alone without a context ... may not be sufficient to prove that a mark is very strong." *Water Pik, Inc.,* 726 F.3d at 1155. Thus, in *Water Pik, Inc.*, the Tenth Circuit held that the defendant's Sinu*Cleanse* mark for its sinus irrigation product was not commercially strong even though it used the mark since 1997, had millions of consumers, sold its product through well-known retailers, committed 30% of its product sales to advertising, and had its product featured on the Oprah Winfrey Show. *See id.* The court held that these facts failed to show whether the product sales were "stimulated by the [Sinu*Cleanse*] mark" or if the public connected the defendant's mark to its product. Here, beside pointing to the bare fact that it advertises its marks, Plaintiff presented no evidence whatsoever that its beer and marks have consumer recognition. Therefore, a reasonable jury could not conclude that this subfactor weighs firmly in Plaintiff's favor.

## 7.  Weighing of Factors

   The record reveals numerous factual disputes concerning the issue of infringement that preclude the entry of summary judgment in favor of either party. None of the six primary infringement factors weigh firmly in Plaintiff's favor, yet it was Plaintiff's summary judgment burden to show that its favorable evidence was "so powerful" to make it insusceptible to "different interpretations or inferences by the trier of fact." *Leone*, 810 F.3d at 1153. Meanwhile, Defendants have shown that only one factor, degree of consumer care, weighs in their favor. The lack of evidence of actual confusion is neutral. As for the other factors – similarity of Plaintiff's marks and Defendants' logo, Defendants' intent, similarity of products and marketing channels, and the

strength of Plaintiff's marks – both parties have raised genuine disputes of material fact, necessitating the denial of the parties' cross-motions for summary judgment.

### B. Affirmative Defenses

#### 1. Trademark Abandonment

Plaintiff sought summary judgment on Defendants' affirmative defense of trademark abandonment. "A mark shall be deemed to be 'abandoned' … [w]hen any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark." 15 U.S.C.A. § 1127. "A defendant asserting abandonment must strictly prove abandonment by clear and convincing evidence." *Navajo Nation v. Urban Outfitters, Inc.*, 212 F. Supp. 3d 1098, 1104 (D.N.M. 2016). Defendants argue that Plaintiff abandoned its marks because at some point Plaintiff knew that Admiral distributed Sierra Blanca's beer under a Route 66 logo, and therefore a jury should determine whether Plaintiff's knowledge constituted abandonment.[6] Defs.' Resp. Br. at 11.

Defendants fail to strictly prove by clear and convincing evidence that Plaintiff abandoned its marks. Since 2012, Plaintiff has continually advertised its marks throughout the United States using either above or below the line advertising. Moreover, although "a trademark holder is not required to sue every possible infringer immediately upon hearing of a possible infringement," *Navajo Nation*, 212 F. Supp. 3d at 1104 (citing *Sara Lee Corp. v. Kayser–Roth*, 81 F.3d 455, 462 (4th Cir.1996)), Plaintiff provided evidence of numerous cease-and-desist letter it sent to alleged

---

[6] Defendants also argue that Sierra Blanca's make of a Route 66-branded beer for five years constituted a period nonuse and abandonment of Plaintiff's marks. However, Defendants support these arguments by relying on Mr. Lackey's hearsay statements that Admiral distributed Sierra Blanca's beer for five years. The Court does not consider Mr. Lackey's statements for the reasons described earlier. *See supra*, pp. 13-14.

infringers throughout the country from 2012 to 2017. Finally, although Plaintiff's sales were lackluster, that fact does not result in abandonment. *See Bishop v. Equinox Int'l Corp.*, No. 97-5161, 1998 WL 650080, at *2 (10th Cir. Sept. 4, 1998) (trademark owner's sales of 98 bottles per year over five-years does not constitute abandonment) (unpublished decision). Plaintiff's evidence amply rebuts a claim of abonnement. The Court grants Plaintiff summary judgment on that affirmative defense.

### 2.     Remaining Affirmative Defenses

Plaintiff additionally moved for summary judgment on Defendants' affirmative defenses of fair use, unclean hands, equitable estoppel, and lack of standing. Defendants completely failed to respond with facts, arguments, and law to protect and prove these remaining defenses even though it was their burden to do so. The Court therefore grants Plaintiff summary judgment on these affirmative defenses to the extent that doing so is not inconsistent with the previous sections of this Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED that** Plaintiff Lodestar Anstalt's Motion for Partial Summary Judgment and a Permanent Injunction **[ECF No. 47]** and Defendants Route 66 Junkyard Brewery LLC's and Henry Lackey's Motion for Summary Judgment on Non-Infringement **[ECF No. 56]** are **DENIED**.

**IT IS SO ORDERED**.

UNITED STATES DISTRICT JUDGE