IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LODESTAR ANSTALT,
a Liechtenstein Corporation,

       Plaintiff,

v.                                                                             CV 17-0062 JCH/JHR

ROUTE 66 JUNKYARD BREWERY,
a New Mexico Limited Liability Company,
and HENRY LACKEY, an Individual,

       Defendants.

# **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Henry Lackey's et al. ("Lackey's") Motion to Deem Andre Levy Deposition and Exhibits as Non-Confidential Documents and Strike Hearsay Documents [Doc. 75], filed October 17, 2018, and Plaintiff Lodestar Anstalt's ("Lodestar's") Motion for a Protective Order and Supporting Memorandum [Doc. 78], filed November 1, 2018. Having considered the parties' briefs and all pertinent authority, the Court will grant in part and deny in part Lackey's Motion as it relates to the de-designation of the Levy deposition and defer ruling in part to presiding District Judge Herrera as to the request to "strike." Lodestar's Motion for a Protective Order is granted.

    **I.**     **BACKGROUND**

U.S. Route 66, also known as the "Main Street of America" or the "Mother Road," is one of the most famous and iconic highways in the United States. *See, e.g.*, https://en.wikipedia.org/wiki/U.S._Route_66. Seizing upon U.S. Route 66's popularity, Lodestar registered a series of trademarks with the United States Patent and Trademark office related to the sale of beers, among other beverages, under what it calls its "Route 66 Marks." [*See* Doc. 17

1

(Amended Complaint) at 3-4]. Lodestar contends that Lackey began infringing on the use of the Route 66 Marks when he opened the "Route 66 Junkyard Brewery" in 2016 and began serving craft beer under a similar mark. [*Id.* at 4]. Claiming that these acts constitute trademark infringement and unfair competition under the Lanham Act, Lodestar seeks a permanent injunction against Lackey and the brewery as well as damages including the disgorgement of profits Lackey enjoyed as a result of the use of the Marks. [*Id.* at 5-7].

On July 17, 2017, this Court, the Honorable William P. Lynch presiding, entered a Stipulated Protective Order approved and submitted by all parties. [*See* Doc. 42]. Pertinent here, the parties agreed that two classifications would apply to the exchange of documents in this case: "Confidential" or "Highly Confidential – Attorneys' Eyes Only (AEO)." [*Id.*, p. 1]. Pursuant to paragraphs 4 and 5 of the Protective Order there are restrictions on the disclosure of what the parties deem to be "Confidential" or "Highly Confidential – Attorneys' Eyes Only (AEO)" documents to non-parties. [*See id.*, pp. 2-3]. Likewise, pursuant to paragraph 9 of the Protective Order either party may designate portions of deposition transcripts Confidential or Highly Confidential – AEO. [*Id.*, p. 5].

On July 19, 2017, Lackey took the deposition of Andre Levy as Lodestar's Rule 30(b)(6) witness. [*See* Doc. 75-1, p. 17]. At page 79 of the deposition Lodestar's counsel stated:

> Why don't we just tentatively mark – designate this portion of the testimony as, "attorneys' eyes – highly confidential, attorneys' eyes only." And then once we get a copy of the transcripts, I'll go back through and identify any particular questions or answers, because I think we can probably limit it a little bit more than just a giant chunk. And so after we see what questions and answers are, I'll go back and make more narrow designations…. And then we can meet and confer further if – if we need to.

[Doc. 75-1, p. 18]. Also attached to the deposition is Exhibit 15, which consists of a "collection of documents that were designated by [Lodestar] as 'attorneys' eyes only – highly confidential[.]'"

[Doc. 75-1, p. 19]. These documents are bates-numbered LOD601 through LOD627. [*Id.*]. Despite designating this testimony and these documents during the deposition, Lodestar did not designate any portions of the deposition or exhibits after it was completed. [*See* Doc. 75, p. 3].

Lackey's present Motion essentially asks the Court to permit Defendants to respond to a subpoena by a defendant (Bacardi) in another case litigated by Lodestar in a federal court in California. [*See generally* Doc. 75]. Under that subpoena, issued May 21, 2018, Lackey is to produce:

1. A copy of each transcript, audio, video or other recording from the deposition(s) of Lodestar Anstalt that were taken in connection with the New Mexico Action, including the depositions of any director, officer, agent, expert witness, or other person or entity acting on Lodestar Anstalt's behalf.

2. A copy of each of the written discovery responses produced by Lodestar Anstalt in connection with the New Mexico Action, including any written responses to document requests, interrogatories, requests for admission, or any other written discovery propounded in the New Mexico Action.

[Doc. 75-1, p. 5]. Lodestar objected to the subpoena in the California Court on May 31, 2018, arguing, among other things, that the subpoena "call[ed] for the production [of] documents that contain confidential and/or trade secret information" and sought irrelevant information. [*See* Doc. 75-1, pp. 7-10]. On June 5, 2018, Lackey's counsel wrote to counsel for Lodestar, indicating that he had received the subpoena and objections and that he would be asking "the Court to remove confidentiality status for the Levi (sic) deposition." [Doc. 75-1, p. 12]. On June 6, 2018, counsel for Lodestar wrote back, pointing to provisions of the Protective Order entered by this Court on July 17, 2017, and concluding that "[w]e request that you do not disclose the designated information until we have met and conferred and if there is a disagreement as to the terms of the Protective Order, at the very least, that Lodestar is provided time to seek clarification from the

Court as to the proper procedure prior to your disclosure." [Doc. 75-1, p. 15]. Lacky's counsel did not respond, but filed the instant Motion nearly four months later. [*See* Doc. 76].

Lackey's Motion seeks three forms of relief. First, Lackey asks the Court to deem the entire Levy deposition transcript non-confidential because Lodestar failed to designate portions of the deposition after it was taken. [Doc. 75, p. 5]. Next, Lackey moves the Court to deem Exhibit 15 to the deposition non-confidential, both because Lodestar did not designate it as such after the deposition, and because the documents contained in it do not meet the standards under the Protective Order. [*See id.*]. Finally, Lackey essentially moves *in limine* to exclude Documents LOD601-LOD627 from the trial in this case as inadmissible hearsay. [*id.*, pp. 8-12].

Lodestar filed a Response to Lackey's Motion on October 31, 2018. [*See generally* Doc. 76]. In it, Lodestar accuses Lackey of failing to properly meet and confer prior to filing his Motion. [*See id.*, p. 4]. Had Lackey done so, Lodestar posits, it would have agreed to some of the relief he requests. For example, Lodestar agrees that the Levy deposition *transcript* can properly be de-designated. [*Id.*]. Additionally, Lodestar agrees to de-designate part of Exhibit 15 (LOD601-LOD615). [*Id.*, p. 6]. However, Lodestar argues against de-classifying the remainder of Exhibit 15 (LOD616-LOD627). [*Id.*, pp. 6-10]. Finally, Lodestar responds to Lackey's request to "strike" Exhibit 15 as inadmissible. [*Id.*, pp. 10-28].

Lackey's Reply in support of his Motion [Doc. 79], adds little to the Court's analysis; however, it should be noted that, prior to Lackey's Reply deadline, Lodestar filed a Motion seeking a Protective Order, which substantively addresses the same issues raised in Lackey's Motion. [*See generally* Doc. 78]. Lodestar's filing "respectfully requests that the Court enter a protective order to prevent Defendants from producing Lodestar's documents and deposition transcript to non-party Bacardi." [Doc. 78, p. 4]. Lodestar then spends the remainder of its Motion

arguing the merits of Bacardi's subpoena and Lackey's decision to respond to it. [*See* Doc. 78, pp. 5-8]. Specifically, Lodestar argues that the documents comprising Exhibit 15 are not responsive to Bacardi's Subpoena, that its "written discovery responses and deposition transcript are not relevant to the California action," and that "there is no basis to order production of Lodestar's attorneys' eyes only information to non-party Bacardi." [*Id.* (capitalization omitted)].

Lackey's Response to Lodestar's Motion for a Protective Order expresses understandable frustration. [*See* Doc. 80]. Not only does Lodestar reverse course from its previous position by seeking a protective order (insofar as it now seeks to preclude Lackey from producing *any* portion of the transcript or Exhibit 15), but Lodestar goes one step further, arguing the merits of Bacardi's subpoena. As such, Lackey seeks an award of attorney fees for having to respond to Lodestar's Motion. [*Id.*, p. 3]. In its Reply brief, Lodestar argues that "the Court should order the requested protective order to prevent an abuse of the discovery rules by [Lackey] and non-party Bacardi." [Doc. 84, p.1]. It then reiterates its position that the documents requested under the subpoena are irrelevant to the California case, it properly designated the documents and transcript at issue as attorneys' eyes only, and that "Defendants seek to produce documents to Bacardi that are not responsive to Bacardi's Subpoena." [Doc. 84, p. 5]. As to Lackey's request for sanctions, Lodestar argues the same is "baseless." [Doc. 84, p. 6].

## II. LEGAL STANDARDS

"Protective orders serve the vital function of securing the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant." *S.E.C. v. Merrill Scott & Associates, Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010) (quoted authority omitted). "The starting point for interpretation of a protective order lies in its plain language." *S.E.C. v. Merrill Scott & Associates, Ltd.*, 600 F.3d 1262, 1271 (10th

Cir. 2010). The parties disagree about the requirement for designation as it relates to a deposition. The plain language of the Protective Order in this case provides that:

> **Any party or nonparty may, within 7 days after receiving a deposition transcript, designate portions of the transcript, or exhibits to it, as "Confidential" or "Highly Confidential – AEO." At the deposition, the parties will attempt in good faith to preliminarily identify and designate Confidential or Highly Confidential – AEO testimony and exhibits without prejudice to their right to so designate other testimony or exhibits or withdraw such designation after receipt of the transcript….** If a timely Confidential or Highly Confidential – AEO designation is made, the deposition transcript and exhibits shall be treated as Confidential or Highly Confidential – AEO under the provisions of this Order. If any other party objects to the designation of a deposition transcript as Confidential or Highly Confidential – AEO, the objecting party shall notify the Court of his objection and the Court will determine whether the deposition transcript should be treated as Confidential or Highly Confidential – AEO under the provisions of this Order. If the Court determines that the deposition transcript is not Confidential or Highly Confidential – AEO, the Confidential or Highly Confidential – AEO designation shall be removed from the deposition transcript.

[Doc. 42, p. 5 (emphasis added)]. A party may move the Court to declassify a document or other materials under paragraph 13 of the Protective Order. [Doc. 42, p. 6]. If a party does so, then the "proponent of confidentiality must show by a preponderance of the evidence that there is good cause for the document to have such protection." [*Id.*]. Under the Protective Order, a "Confidential" document must "meet[] the applicable legal standards for being marked confidential and/or being filed under seal," whereas the "Highly Confidential – AEO" document "designation is limited to material that is so commercially sensitive that a party would be at a severe economic disadvantage if its competitors were able to review the material. Examples of 'Highly Confidential – AEO' material include, but are not limited to customer lists and trade secrets." [*Id.*, p. 1].

Protective orders are governed by Federal Rule of Civil Procedure 26(c), which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1); *see Miller v.*

*Regents of the Univ. of Colo.*, 88 F.3d 518 (Table), 1999 WL 506520 at *11–12 (10th Cir. July 19, 1999) ("The district court is in the best position to weigh these variables because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties."). "The modification of a protective order, like its original entry, is left to the sound discretion of the district court." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008).

The burden of showing good cause falls at all times on the party seeking protection. "Conclusory or stereotypical assertions are insufficient to show good cause." *S.E.C. v. Dowdell*, 144 Fed. Appx. 716, 723 n.2 (10th Cir. 2005). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede Trust Co. v. Thompson*, 56 F. 3d 476, 483 (3d Cir. 1995). If good cause is demonstrated, the Court is able to take a variety of actions in issuing a protective order, including:

> **(A) forbidding the disclosure or discovery;**
> (B) specifying the terms, including time and place or the allocation of expenses, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> …
> (F) requiring that a deposition be sealed and opened only on court order;
> **(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]**

*Id.* at 26(c)(1)(A)-(G) (emphasis added). If a protective order is denied, the Court may order the discovery that was sought to be precluded. Fed. R. Civ. P. 26(c)(2).

"Rule 37(a)(5) applies to the award of expenses." Fed. R. Civ. P. 26(c)(3). Under Rule 37(a)(5)(A), the Court must award expenses against the nonmovant or its attorney if such a motion

is granted unless the nonmovant's position was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied the Court instead must award expenses against the movant. Fed. R. Civ. P. 37(a)(5)(B).  If a motion to compel or for protective order is granted in part and denied in part, the Court may apportion the parties' reasonable expenses. Fed. R. Civ. P. 37(a)(5)(C). Thus, "[t]he great operative principle of Rule 37(a)(5) is that the loser pays," *In re Lamey*, 2015 WL 6666244 at *4 (D.N.M. 2015) (quoting Wright, Miller & Marcus, *Federal Practice and Procedure* (3d ed. 2010), § 2288, n.17), unless the losing position was substantially justified or an award of expenses would otherwise be unjust. *Id.* at *5.

Federal Rule of Civil Procedure 45 governs subpoenas directed at nonparties to litigation. *See generally* Fed. R. Civ. P. 45. Under the Rule, the court where compliance is required must quash or modify a subpoena that fails to allow reasonable time for compliance, requires excessive travel, requires the disclosure of privileged or other protected materials, or subjects the subpoenaed person or entity to an undue burden. Fed. R. Civ. P. 45(d)(3)(A). Likewise, the Court may, on motion, quash or modify a subpoena that requires the disclosure of trade secrets or other confidential information. Fed. R. Civ. P. 45(d)(3)(B). Additionally, while Rule 45 does not specifically provide for lack of relevance as a reason for quashing a subpoena, it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b). *Booth v. Davis*, CV 10-4010 RDR, 2011 WL 2008284 at *6 (D. Kan. 2011); *E.E.O.C. v. Unit Drilling Co.*, 2014 WL 130551, at *2 (N.D. Okla. Jan. 13, 2014).

Rule 26(b)(1) governs the scope of discovery, "[u]nless otherwise limited by court order," providing that:

> [p]arties may obtain discovery regarding any nonprivileged matters that is relevant to any party's claim or defense and proportional to the needs of the case,

8

> considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Under the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

### III. ANALYSIS

The parties' motions raise several interrelated issues. The first is whether the Levy deposition transcript and Exhibit 15 should be de-designated. The second is whether the Court should "strike" Exhibit 15 from trial. Finally, assuming that the Court orders the Levy deposition to be de-designated, the Court must decide whether to issue a protective order in this action which would preclude Lackey's compliance with Bacardi's subpoena, as Lodestar requests. The Court addresses each issue in turn.

### A) De-Designation of Highly Confidential – AEO documents

Lackey argues that the Court should deem the entire Levy deposition and exhibits thereto non-confidential because Lodestar did not designate it as confidential within seven days of receiving the transcript. [*See* Doc. 75, p. 5]. The Court finds this to be an overly-narrow reading of the Protective Order. [*See* Doc. 42, p. 5]. As the Court reads the Order, the parties essentially had two opportunities to designate the deposition confidential under the Protective Order. [*Id.*]. First, a party could attempt in good faith to designate portions of the deposition while it was occurring, without prejudice to later withdrawing or adding to that designation. [*Id.*]. Second, a party could designate portions of a deposition within seven days of receiving the transcript. [*Id.*]. Lodestar took advantage of the first of these options. As such, the Court will not order the entire

Levy transcript and exhibits de-designated for failure to comply with the Protective Order's alternative mechanism.

Turning to whether the Levy deposition and exhibits meet the qualitative standards or the Protective Order, Lodestar bears the burden of persuasion as the proponent of confidentiality, and it must prove its claim by a preponderance of the evidence. Here, however, there is an added wrinkle: in its Response to Lackey's Motion, Lodestar takes the position that the transcript and a portion of Exhibit 15 can be de-designated. [Doc. 76, p. 4]. The Court is inclined to hold Lodestar to its position, as it was asserted in a written paper filed with the Court. *See* Fed. R. Civ. P. 11(b). As such, the Court will order the Levy transcript de-designated, as well as the portion of Exhibit 15 bates-stamped LOD601-LOD615. [*See* Doc. 76, pp. 5-6].

This leaves the remainder of Exhibit 15 (LOD616-LOD627). Lodestar argues that the four documents that make up Exhibit 15 were properly designated as "Highly Confidential - AEO." [*See* Doc. 76, pp. 6-10]. As noted above, the "Highly Confidential – AEO" document "designation is limited to material that is so commercially sensitive that a party would be at a severe economic disadvantage if its competitors were able to review the material. Examples of 'Highly Confidential – AEO' material include, but are not limited to customer lists and trade secrets." [Doc. 42]. The Protective Order does not define "trade secret" or "commercially sensitive," and neither party cites authority construing those terms. Therefore, the Court looks to existing law. Most basically, "[t]rade secret or commercially sensitive information must be 'important proprietary information.'" *Zoobuh, Inc. v. Rainbow Int'l Corp.*, 2015 WL 2093292, at *3 (D. Utah May 5, 2015) (quoted authority omitted).[1] "Under Fed R. Civ. P. 26(c)(1)(G), a court may, for good cause,

---

[1] The Court notes that under federal law, "[t]here is no absolute privilege for trade secrets and similar confidential information." *Centurion Indus., Inc. v. Warren Steurer & Associates*, 665 F.2d 323, 325 (10th Cir. 1981) (quoting *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 (1979)). In fact, in contrast to state law, there is no federal privilege for trade secrets. *Compare* Fed. R. Civ. P. 501 *with* Rule 11-508 NMRA; *Pincheira v. Allstate Ins.*

10

issue a protective order (or permit a party to avail itself of an already issued protective order) to require that 'a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.'" *Coll v. Stryker Corp.*, CV 14-1089 KG/SMV, 2017 WL 1390658, *2 (D.N.M. 2017) (quoting *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009)). "When a party seeks such a protective order, it 'must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful.'" *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1190 (quoting *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir.1981)). "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure." *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1195.

Under New Mexico law, a trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that: (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Pincheira v. Allstate Ins. Co.*, 2008-NMSC-049, ¶ 15, 144 N.M. 601, 605, 190 P.3d 322, 326 (quoting NMSA 1978, § 57-3A-2(D)). Six factors "provide helpful guidance to determine whether the information in a given case constitutes 'trade secrets[:]'"

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is know by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and his competitors; (5) the amount of effort or

---

*Co.*, 2007-NMCA-094, ¶ 30, 142 N.M. 283, 291, 164 P.3d 982, 990 ("this rule was never adopted by Congress and is not part of the Federal Rules of Evidence."), *aff'd on other grounds, Pincheira v. Allstate Ins. Co.*, 2008-NMSC-049, ¶ 30, 144 N.M. 601, 190 P.3d 322. However, as the New Mexico Supreme Court has recognized, there is a difference between discovery protections under Rule 26(c) and evidentiary privilege. *Pincheira v. Allstate Ins. Co.*, 2008-NMSC-049, ¶ 20, 144 N.M. 601, 607, 190 P.3d 322, 328. Here, the Court is dealing with information that is not privileged as a matter of federal law, but which is nonetheless protectable under Rule 26(c).

money expended by him in developing the information; (6) the ease or difficulty
with which the information could be properly acquired or duplicated by others.

*Pincheira*, 2008-NMSC-049, ¶ 15. With these standards in mind, the Court addresses each document in turn.

As to the first document (LOD616), Lodestar argues that it "contains business plans for Route 66 beer, and includes confidential pricing information, and a confidential analysis of the market and opportunity for Route 66 beer around the 2012 timeframe." [Doc. 76, p. 6]. Lodestar further argues that "[i]f this information was publicly released, Lodestar's competitors could use the information to their advantage and unfairly compete against Lodestar." [*Id.*, p.7]. The Court has reviewed LOD616, which appears to be a flyer created by Lodestar for distribution to prospective buyers of Route 66 beer. [*See* Doc. 77, p.3]. As lodestar represents, the flyer contains pricing information as well as some numbers that might liberally be construed as "market analysis." [*Id.*]. "Lodestar considers its pricing information and business strategy contained in this document to be proprietary, and it protects that information from public disclosure and from competitors." [Doc. 76-1, p. 2]. In his Reply, Lackey does not challenge these assertions, other than to label them "conclusory." [*See* Doc. 79, p. 3]. Lackey further argues that Lodestar has failed to show how such a document is protectable as a trade secret under New Mexico law. [*Id.*]. The Court cannot agree with Lackey, for two reasons.

First, the Court finds that Lodestar has met its initial burden of persuasion to demonstrate that LOD616 is protectable as a trade secret. Lodestar's burden was merely to prove the existence of a trade secret by the preponderance of the evidence. Here, LOD616 is arguably information from which Lodestar derives economic value and it has demonstrated that it protects this information from competitors. Lackey's position, which would have required Lodestar to expressly address each of the six factors enumerated in *Pincheira* is rejected. As that court stated,

these factors merely "provide helpful guidance" in determining whether information can properly be labeled a "trade secret." *Pincheira*, 2008-NMSC-049, ¶ 15. Second, Lackey's position takes an overly-narrow view of the Protective Order, which protects not only trade secrets, but also "commercially sensitive" information. While neither party defines "commercially sensitive," the Court believes that LOD616 contains "important proprietary information" subject to protection from disclosure. As such, the Court will not order it de-designated.

According to Lodestar, documents LOD617-LOD624 are "invoices from the U.S. brewery that brews Route 66 beer for Lodestar regarding the sale of Route 66 beer, and includes quantities and confidential pricing information." [Doc. 76, p. 7]. Having reviewed the documents, they are what Lodestar claims them to be. [*See* Doc. 77, pp. 5-12]. Lodestar considers the pricing information contained in LOD617-LOD624 to be proprietary, and it protects that information from public disclosure and from its competitors because, if it were public, Lodestar's competitors could use the information to their advantage and unfairly compete against Lodestar. [Doc. 76-1, p. 3]. Again, Lackey does not challenge these assertions. [*See* Doc. 79, p. 3]. Accordingly, the Court finds that LOD617-LOD624 should remain designated and protected under the Protective Order.

LOD625 "contains a supply order report for Route 66 beer brewed in the United States and which was exported from the United States[.]" [Doc. 76, p. 7]. According to Lodestar, LOD625 "includes the net value of the various orders, which Lodestar considers to be proprietary and protects from public disclosure and from competitors." [Doc. 76-1, pp. 3-4]. Again, Lackey does not challenge these assertions, [*see* Doc. 79, p. 3], and the Court believes that such information is, at a minimum, "commercially sensitive" under the Protective Order. As such, the Court finds that LOD625 should remain designated and protected under the Protective Order.

Finally, document LOD626-LOD627 "contains a report listing overseas sales for Route 66 beer which was manufactured in the United States and shipped from the US, and includes confidential customer information for Lodestar's products." [Doc. 76, pp. 7-8; Doc. 76-1, p. 4]. The Court finds that this document clearly merits protection under the Protective Order, which includes as examples of protectable materials "customer lists." [Doc. 42]. As such, the Court will not order it de-designated.

In summary, the Court will order de-designated the Levy deposition *transcript*, as well as the portion of Exhibit 15 thereto which it bates-stamped LOD601-LOD615. However, the Court hereby orders that the remainder of Exhibit 15 will remain designated and protected under the Protective Order. Therefore, Lackey's Motion is granted in part and denied in part.

**B) Motion to "Strike" Exhibit 15 from the trial in this case.**

The undersigned was assigned as the "pre-trial Magistrate Judge" in this case. *See* D.N.M.LR-Civ. 73.1(a). As such, this Court is permitted only "to preside over non-dispositive pre-trial matters in accordance with Fed. R. Civ. P. 72(a)." *Id.* Matters relating to trial, including motions *in limine*, are ordinarily considered dispositive in this district. *See* D.N.M.LR-Civ. 73.2(a). As such, the Court will defer ruling on whether Exhibit 15 is admissible at the trial of this matter to presiding District Judge Herrera.

**C) Whether to quash Bacardi's subpoena or issue a protective order in this case.**

Finally, the Court must address whether to issue a protective order precluding Lackey from complying with Bacardi's subpoena, or quashing the same.

    **i.    Standing**

"Before addressing the merits of any given case, a federal court must determine that the complaining party has standing to raise his claims." *Morris v. Ulibarri*, CV 06-1052 MV/DJS,

2010 WL 11474423 at *2 (D.N.M. 2010) (citing *Horne v. Flores*, 129 S.Ct. 2579, 2592 (2009)). Generally, only the person or entity subject to the subpoena has standing to object to it, unless a privilege or privacy interest is shown. *Morris*, 2010 WL 11474423 at *2. "Absent a specific showing of privilege or privacy, a court cannot quash a subpoena duces tecum." *Windsor v. Martindale*, 175 F.R.D. 665 (D. Colo. 1997). Such a privacy interest has been found where the subpoenaed documents consist of medical or financial records. *See, e.g.*, *Shutrump v. Safeco Insurance Co. of America*, CV 17-0022 CVE/TLW, 2017 WL 3579211 at *2 (N.D. Okla. 2017). However, "[f]or a party to have standing to challenge a subpoena served on a non-party, there must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Powell v. Allied Universal Security Services*, CV 12-6133 ARR/SJB, 2018 WL 4378168 at *1 (E.D.N.Y. 2018) (quoted authority omitted).

The Court finds that Lodestar has standing to object to the subpoena in this case insofar as it argues that the subpoena seeks documents that are confidential and commercially sensitive. Accordingly, it will proceed to the merits of Lodestar's objections.

    **ii.    Merits**

"The federal courts have interpreted the liberal discovery rules as allowing a party to 'generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal.'" *Pincheira*, 2008-NMSC-049, ¶ 25 (quoting *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 683–84 (5th Cir.1985)). "In particular, parties may disseminate materials to litigants in other cases or to the public…. The right to disseminate, however, may be limited by a protective order issued under Rule 26(c) of the Federal Rules of Civil Procedure." *Id.* (citations omitted). "To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires … disclosing

a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Thus, the Court begins with the proposition that the requested materials are shareable subject to the Protective Order already entered in this case. Against that backdrop, Lodestar seeks a new protective order preventing "disclosure of Lodestar's documents, discovery responses and deposition testimony in this action to non-party Bacardi." [Doc. 84, p. 1].

First and foremost, the Court finds that a protective order should issue as to the documents that Lodestar has designated under the Protective Order, for the reasons stated above. Lodestar has met its burden of proving the protectability of those documents under the current Protective Order by a preponderance of the evidence. As such Lodestar's Motion is granted as to LOD616-LOD627. *See* Fed. R. Civ. P. 45(d)(3)(B)(i).

What remains are Lodestar's arguments that its documents, discovery responses and testimony in this action are not relevant to the California Action between Lodestar and Bacardi. As noted above, the scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Here, the Court must analyze whether the requested information is relevant to Lodestar's claims against Bacardi in the California case. Like this case, Lodestar brings claims against a competitor under the Lanham Act for trademark infringement and unfair competition, in addition to related state claims. [*See* Doc. 78-2, pp. 19-44]. Unfortunately, Bacardi did not intervene in this action to argue relevance, and Lackey does not address Lodestar's relevancy objection. [*See generally* Doc. 80]. Having reviewed Lodestar's complaint in the California action, the Court is hard-pressed to find that documents produced in this case are relevant to the claims raised there, [*see* Doc. 78-2, pp. 19-44], or to any putative defenses Bacardi could raise. *See, e.g.*, *Navajo Nation v. Urban Outfitters, Inc.*, 212 F. Supp. 3d

1098 (D.N.M. 2016) (discussing and rejecting the defendants' defenses of generic perception and abandonment); *see also* 15 U.S.C. § 1115(b).

Having determined that the documents requested by Bacardi's subpoena are irrelevant to the California case, the Court will issue the protective order Lodestar requests. *See, e.g.*, *Broadcort Capital Corp. v. Flagler Sec., Inc.*, 149 F.R.D. 626, 629 (D. Colo. 1993); *Navajo Nation v. Urban Outfitters, Inc.*, 2015 WL 11109396, at *4 (D.N.M. May 15, 2015) ("[T]he Court may only order discovery of a matter that is within the scope of discovery.").

### D) Sanctions

Finally, the Court will not award sanctions or costs to either party. To the extent that Lackey's Motion is granted, the Court finds that Lodestar's "nondisclosure, response or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A). To the extent that Lackey's Motion has been denied, the Court finds that his position was substantially justified. Fed. R. Civ. P. 37(a)(5)(B). Finally, although the Court is issuing a protective order as to the Bacardi subpoena, Lackey's position in opposing the protective order was substantially justified given the circumstances of this case.

### IV. CONCLUSION

For the foregoing reasons, Lackey's Motion to Deem Andre Levy Deposition and Exhibits as Non-Confidential Documents and Strike Hearsay Documents [Doc. 75], is GRANTED IN PART AND DENIED IN PART, and Lodestar's Motion for a Protective Order and Supporting Memorandum [Doc. 78], is GRANTED. The Levy transcript and LOD601-LOD615 are no longer confidential; however, the balance of Exhibit 15 remains protected. Lodestar's materials are protected from disclosure in response to the Bacardi subpoena. The parties shall bear their own attorneys' fees and costs for litigating the instant motions.

IT IS SO ORDERED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE